AUSA: Keith Savino

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 26 MAG 687

UNITED STATES OF AMERICA

v.

JASON ROMAN,
a/k/a "Speedy,"

Defendant.

**COMPLAINT**

Violation of 18 U.S.C. § 922(g)(1)

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

Kerry Conroy, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
**(Possession of Ammunition After a Felony Conviction)**

1. On or about November 30, 2025, in the Southern District of New York, JASON ROMAN, a/k/a "Speedy," the defendant, knowing that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly and intentionally did possess, in and affecting commerce, ammunition, to wit, two 9-millimeter bullets; the ammunition having been previously shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1))

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purposes of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part.

### NYPD Response to Shots Fired in 44th Precinct

3. Based on my participation in this investigation, including my conversations with law enforcement officers, my review of New York City Police Department ("NYPD") body-worn camera footage, reports authored by NYPD, and my review of interior and exterior building surveillance footage, I have learned, in substance and in part, the following:

a. On or about November 30, 2025, at approximately 7:04 PM, police officers from the NYPD's 44th Precinct responded to approximately three 9-1-1 calls for reports

of approximately two shots fired in the vicinity of a particular address located within the confines of that precinct in the Bronx, NY ("Address-1").

b. NYPD police officers canvassed the area around Address-1 and discovered two 9-millimeter shell casings on the sidewalk across the street from Address-1. A photograph of the two shell casings, delineated with numbered orange cones placed by the NYPD Evidence Collection Team, is below:



c. NYPD police officers spoke with individuals gathered in the lobby of Address-1, including the intended victim of the apparent attempted shooting ("Victim-1"). Based on my review of NYPD body-worn camera footage, and statements provided by Victim-1, I know the following:

i. On or about November 30, 2025, at approximately 6:38 PM, the defendant, JASON ROMAN, started an argument with Victim-1 and Victim 1's friends inside the lobby of Address-1, where ROMAN lived.

ii. Victim-1 and Victim-1's friends exited Address-1, and ROMAN entered the elevator at the rear of the lobby and remained inside the building.

iii. At approximately 7:02 PM, Victim-1 returned to the vicinity of Address-1. As Victim-1 walked towards Address-1, on the opposite side of the street, ROMAN approached Victim-1, removed a firearm from his jacket, and fired two shots at Victim-1. Victim-1 ran away from ROMAN and was not injured.

<u>Identification of ROMAN as the Shooter</u>

4. Based on my conversations with the NYPD 44th Precinct detective assigned to this incident (the "Case Detective"), as well as my review of interior and exterior surveillance footage from Address-1, I know the following:

a. Recorded video footage was recovered from the surveillance security system located at Address-1. The NYPD Case Detective determined that the time and date stamp for the footage was one-hour ahead of real time for the video files depicting

the lobby, vestibule, and exterior of Address-1. The time and date stamp for the video files of a particular floor of Address-1 was accurate to real time.

b. On or about November 30, 2025, at approximately 19:38:20 on the video file time stamp, (6:38:20 PM in real time), ROMAN was captured on surveillance video inside the lobby of Address-1 engaged in an argument with Victim-1 and Victim-1's friends. A knife is visible in ROMAN's left hand (circled in red below). ROMAN was wearing a black brimmed hat, black jacket, black pants, and black shoes with a white trim. A still of the footage is below:




c. At approximately 19:42:38 on the video file time stamp (6:42:38 PM in real time), ROMAN was captured on surveillance video waiting near the elevator in the rear of the lobby at Address-1. ROMAN's black hat and clothing were visible, along with an unobstructed view of his face and distinct facial hair. A still of the footage is below:




d. At approximately 20:02:06 and 20:02:07 on the video file time stamps (7:02:06 and 7:02:07 PM in real time), an exterior camera across from Address-1 captured what appeared to be muzzle flashes illuminating from the far, darkened end of the sidewalk. Based on my training and experience as an FBI agent, and my training and familiarity with firearms, I know that muzzle flashes are bright, instantaneous bursts of light that are visible when a gun is fired, and the bullet exits the barrel of the firearm. The surveillance video also captured what appeared to be an individual running away from the direction of the muzzle flashes. Still frame images of the

footage are below, with red circles indicating where I believe the muzzle flashes are visible:







e. At approximately 20:02:18 on the video file time stamp (7:02:18 PM in real time), an individual was captured on the surveillance video running down the block, towards the surveillance camera, from the same direction where the muzzle flashes had appeared seconds earlier. The individual was wearing a black hat, black jacket, black pants, and black shoes with white trim, consistent in appearance with the clothing ROMAN was wearing inside Address-1, *see supra* ¶ 4(b)-(c). A still frame image of the footage is below:




f. From approximately 20:02:32 – 20:02:35 on the video file time stamp (7:02:32 – 7:02:35 in real time), ROMAN was captured on surveillance video reentering the vestibule of Address-1 and running through the lobby to the elevator. ROMAN was wearing a black knit hat, black jacket, black pants, and black shoes with white trim. Still frame images of the footage are below:







g. From approximately 19:03:41 – 19:03:50 on the video file time stamp, which was accurate to real time (7:03:41 – 7:03:50 PM), ROMAN was captured on surveillance video at the front door of his apartment inside Address-1. However,

rather than entering his apartment, ROMAN walked down the hall and entered the apartment directly next door. Still frame images of the footage are below:







h. At approximately 7:09 PM, NYPD officers tracked ROMAN to his particular floor inside Address-1, via the above-described surveillance footage. For approximately thirty-five minutes, officers asked ROMAN to surrender to authorities, however, ROMAN did not respond, nor did he leave the apartment. Eventually, at approximately 7:44 PM, ROMAN exited his neighbor's apartment and was placed under arrest by the NYPD.

<u>The Ammunition and Interstate Commerce</u>

5. The two cartridge casings recovered across from Address-1 were both determined to be 9-millimeter LUGER caliber, FEDERAL casings, ("the Shell Casings"). I have communicated with a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") who is familiar with the manufacturing of ammunition and who confirmed that the Shell Casings were manufactured outside of the state of New York.

<u>ROMAN's Prior Felony Conviction</u>

6. Based on my review of criminal history records for ROMAN, I have learned the following in substance and in part:

a. On or about May 23, 2005, ROMAN was convicted in Bronx County Supreme Court of one count of Manslaughter in the First Degree in violation of N.Y. Penal Law § 125.20. On or about June 9, 2005, ROMAN was sentenced to 18 years' imprisonment for that offense.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JASON ROMAN, a/k/a "Speedy," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

Kerry Conroy (by VF with permission)
Kerry Conroy
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Complaint by reliable electronic means (telephone), this 6 day of March, 2026.

THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York